CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 0 1 2008
JOHN F. CORCORAN, CLERK
BY: S. Taylor
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TIMMY SPICER, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 7:07cv462 |
| ) | |
| UNIVERSAL FOREST PRODUCTS, ) | |
| EASTERN DIVISION, INC., et al., ) By: | Michael F. Urbanski |
| ) | United States Magistrate Judge |
| Defendants ) | |

## MEMORANDUM OPINION

This matter is before the court on plaintiff Timmy Spicer's ("Spicer") motion for sanctions against defendants Universal Forest Products Eastern Division, Inc. ("Universal") and Scott Weeks ("Weeks") for violations of discovery rules and orders in this case. The matter has been briefed and oral argument was held on September 19, 2008.

In this employment case, Spicer alleges that he was wrongfully terminated in violation of federal law, including age and disability discrimination, and termination in retaliation for filing a workers' compensation claim for workplace injuries. Universal denies these allegations and contends that Spicer was terminated due to a downturn in its business and Spicer's unacceptable work performance.

Spicer contends that Universal has violated discovery rules by not providing relevant and responsive documents, failing to identify persons with knowledge regarding Spicer's termination, failing to comply with the time requirements of court orders concerning discovery, and failing to

meet its obligations to provide a knowledgeable person for a corporate deposition under Fed. R. Civ. P. 30(b)(6).

## I.

Federal Rule of Civil Procedure 37(b)(2) permits a court to enter sanctions against a party if the party, or the party's 30(b)(6) witness, fails to obey an order to provide or permit discovery. Sanctions may include: (a) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action; (b) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence; (c) striking pleadings; and (d) rendering a default judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2)(A). Alternatively or additionally, a court may order the disobedient party to pay reasonable expenses including attorney's fees caused by the failure to comply with the order. Fed. R. Civ. P. 37(b)(2)(C). Sanctions may also be imposed if a party or 30(b)(6) designee fails to appear for his deposition. Fed. R. Civ. P. 37(d)(1).

The Fourth Circuit has developed a four part test for use in determining what sanctions to impose under Rule 37. Wilson v. Volkswagen of Am., Inc., 561 F.2d 494, 503-06 (4th Cir. 1977), cert. denied, 434 U.S. 1020 (1978). The court must determine (1) whether the non-complying party acted in bad faith; (2) the amount of prejudice that noncompliance caused the adversary; (3) the need for deterrence of the particular sort of non-compliance; and (4) whether less drastic sanctions would have been effective. Id. at 503-06.

## II.

As regards document discovery, Spicer argues that discovery obtained from third parties suggests Universal may not have produced all documents concerning him, his employment and

2

termination with Universal, or any workers' compensation claims he has filed. In particular, Spicer questions Universal's failure to produce several emails between Universal and its worker's comp carrier discussing Spicer's termination; a letter written near the time of Spicer's termination allegedly stating that he was terminated due to his attitude, work record, age and health; and a six inch workers' compensation file sent to Universal by a third party involved in the comp claim. Defendants' counsel responded that all relevant and responsive documents have been produced. At the hearing, however, equivocation in representations by defense counsel gave the court concerns that defendant may be parsing plaintiff's discovery requests too narrowly. As a result, it was orally **ORDERED** at the September 19, 2008 hearing that any documents in defendant's possession, custody or control concerning plaintiff Timmy Spicer, which have not been previously produced, must be produced to plaintiff by September 26, 2008. After objection by Universal, the oral order was vacated and a written order compelling production was entered on September 29, 2008.

## III.

Spicer argues that Universal's lack of good faith in the discovery process is exemplified by its repeated pattern of tardy compliance with discovery obligations and court orders. Spicer states that Universal has on four occasions missed discovery deadlines imposed by court orders. While the court is concerned regarding such a pattern of noncompliance, it appears that the discovery was tendered, albeit a few days late on several instances. As stated at the hearing, however, the court is gravely concerned with Universal's failure to identify in written discovery three persons with knowledge of facts concerning this case, Kim Peterson, Dana Weeks and Gloria Black. At the hearing, Universal offered no comprehensible justification for the reason

3

these Universal employees, who appear from emails obtained from third parties to have been in communications regarding plaintiff and his workers' compensation claim within days of his termination, were not identified in response to plaintiff's Interrogatories 3 and 17. Interrogatory 3 asked Universal to "identify each and every person who was involved in the decision to terminate Plaintiff" and Interrogatory 17 asked it to "[i]dentify all persons with knowledge of the events alleged in the lawsuit and for each individual describe that knowledge." The answers to Interrogatories 3 and 17 did not list either Kim Peterson, Dana Weeks[1] or Gloria Black. Despite Universal's failure, Spicer deposed Kim Peterson. As a result, as egregious as Universal's failure to identify those persons with knowledge appears to be, Spicer has not suffered any prejudice from the failure to identify Kim Peterson as she was deposed. Such cannot be said as regards Dana Weeks or Gloria Black, as they have not been deposed. As to these two witnesses, it is **ORDERED** that Universal make them available for deposition in Roanoke at Universal's expense prior to trial.

## IV.

Most disturbing of all is Universal's abject failure to comply with the requirements of Fed. R. Civ. P. 30(b)(6). The court has read the 30(b)(6) deposition taken on August 28 and 29, 2008 and is struck by the appalling lack of any preparation by the witness who was designated to speak for the corporation on the issues in this case. Over and over again, Universal's 30(b)(6) witness, Robert Hendricks ("Hendricks"), testified that he did no investigation of the topics listed in the 30(b)(6) notice except to talk to counsel. When asked what the conversations with counsel

---

[1] That is true even though the answers were verified by Scott Weeks, Dana Weeks' husband.

4

entailed, counsel objected and instructed the witness not to answer on privilege grounds. A typical colloquy is as follows:

> Q. What did you do to investigate topic number four?
>
> A. I had conversation with our counsel.
>
> Q. Did you talk to anybody within the company?
>
> A. Other than our counsel, no.
>
> Q. Did you look at any documents?
>
> A. To the best of my recollection, the documents that I looked at with our counsel did not include documents that related to this topic.
>
> Q. Is it fair to say you've done no preparation for topic four?
>
> A. Independent of that conversation with our counsel, yes.
>
> Q. Are you permitted today to discuss what your counsel told you?
>
> MR. FRENCH: To the extent he's going to discuss privileged communications, no.
>
> Q. Let me ask you this then, sir: Is there any information on behalf of the company that you can provide us for topic four?
>
> A. No.

(Universal 30(b)(6) deposition at 87-88).

Similar responses were provided to questions concerning Rule 30(b)(6) topic 7 (Universal 30(b)(6) deposition at 50-52); topic 6 (Universal 30(b)(6) deposition at 58); topic 8 (Universal 30(b)(6) deposition at 66-72, 96-97); topic 5 (Universal 30(b)(6) deposition at 90-95); topic 9

5

(Universal 30(b)(6) deposition at 98); topic 10 (Universal 30(b)(6) deposition at 98-103); topics 11, 17 and 18 (Universal 30(b)(6) deposition at 103-07); topic 12 (Universal 30(b)(6) deposition at 107); topic 13 (Universal 30(b)(6) deposition at 115-16); topic 15 (Universal 30(b)(6) deposition at 116-19); topic 16 (Universal 30(b)(6) deposition at 120-23); Amended 30(b)(6) topic 1.a. (Universal 30(b)(6) deposition at 128); Amended 30(b)(6) topic 1.b. (Universal 30(b)(6) deposition at 128-32); Amended 30(b)(6) topic 1.c. (Universal 30(b)(6) deposition at 132).[2]

Apparently, the only thing the corporate deponent did to acquire knowledge about the topics to be covered at the corporate deposition was meet with Universal's counsel. While the deponent may have obtained some information on these subjects from counsel, the deponent was instructed by Universal's counsel not to answer any questions about what he had learned with counsel. Thus, the 30(b)(6) deposition was a futile exercise for Spicer.

It is clear from review of the transcript that Hendricks was simply unaware of his role as a 30(b)(6) corporate designee. For example, when asked about the profitability of the Pearisburg plant,[3] Hendricks testified, "You know, it isn't in my job description to know the details of that ...." (Universal 30(b)(6) deposition at 120). Hendricks further testified regarding financial reports, "I'm not an accountant and I'm not trained to prepare financial information. It is not part of my job to review financial information." (Universal 30(b)(6) deposition at 122). At the same

---

[2] It bears noting that the 30(b)(6) deposition of Universal had been the subject of two Universal motions for protective order and two hearings on various objections Universal made to the scope of the topics to be discussed at the 30(b)(6) deposition. Certainly, the scope and significance of the 30(b)(6) deposition was not lost on Universal.

[3] Universal cites a financial downturn in its business as one of its defenses in this case. See Universal's Mem. in Support of Def.'s Mot. Summ. J. 15, Ex. G.

6

time, Hendricks admitted that the information sought could have been obtained through investigation, had he done any. (Universal 30(b)(6) deposition at 122).

The Federal Rules of Civil Procedure and case law require more of a corporation responding to a Rule 30(b)(6) deposition notice than Universal has done here. Once a corporation has been named as a deponent, it becomes the corporation's duty to name one or more individuals who will testify on its behalf regarding matters known or reasonably available to the corporation.

The corporation must make a good-faith effort to designate people with knowledge of the matter sought by the opposing party and to adequately prepare its representatives so that they may give complete, knowledgeable, and nonevasive answers in deposition. See, e.g., Protective Nat. Ins. Co. of Omaha v. Commonwealth Ins. Co., 137 F.R.D. 267, 278 (D. Neb. 1989). As the court aptly noted in United States v. Taylor, 166 F.R.D. 356 (M.D.N.C. 1996):

> The testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the corporation, not of the individual deponents. The designated witness is 'speaking for the corporation'. . . . The corporation appears vicariously through its designee. If the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation. Thus, the duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved.
>
> Rule 30(b)(6) explicitly requires [a corporation] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires such persons to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition.

7

Id. at 361-62 (internal citations omitted). The fact that preparation for a 30(b)(6) deposition requires many hours of work and review of voluminous documents does not relieve the corporation of its responsibility to adequately prepare. Concerned Citizens of Belle Haven v. The Belle Haven Club, 223 F.R.D. 39, 43 (D.Conn. 2004); see also Taylor, 166 F.R.D. at 362 ("The Court understands that preparing for a Rule 30(b)(6) deposition can be burdensome. However, this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business.").

If it becomes apparent through the course of the deposition that the corporation's designee is unable to provide testimony on the matters in the notice, the corporation has a duty to provide a substitute who can provide the required testimony. FDIC v. Butcher, 116 F.R.D. 196, 201-02 (E.D. Tenn. 1986). Sanctions may be properly imposed against a corporation when its designee is unknowledgeable of relevant facts and it fails to designate an available, knowledgeable, and readily identifiable witness because such an "appearance is, for all practical purposes, no appearance at all." Resolution Trust Co. v. Southern Union Co., 985 F.2d 196, 197 (5th Cir. 1993). That is, in fact, what happened in this case.

Universal argues that Spicer has obtained the information sought in the 30(b)(6) deposition from other sources in this case and that therefore sanctions for violation of the rules are inappropriate. To be sure, courts may limit the frequency or extent of discovery when the discovery sought is unreasonably cumulative or duplicative. See Fed. R. Civ. P. 26(b)(2)(C)(i). However, the discovery materials provided to the court for review reveals that certain topics, in particular, that concerning Universal's financial condition, appear not to have been addressed

8

with any specificity elsewhere, and thus the information sought by Spicer in the 30(b)(6) deposition was neither cumulative nor duplicative.

Moreover, the cases cited by Universal in support of its argument that the information sought in the 30(b)(6) deposition was available through other means of discovery are distinguishable from the egregious circumstances presented here. For example, Universal cites Banks v. Office of the Senate Sergeant-at-Arms, 222 F.R.D. 7, 19 (D.D.C. 2004) for the proposition that parties seeking discovery are "not [to] ask questions that duplicate questions previously asked of other witnesses or seek information [they] already ha[ve] by virtue of responses to other discovery devices." However, the same court noted in Tri-State Hospital Supply Corp. v. United States, 226 F.R.D. 118 (D.D.C. 2005), that "Banks does not stand for the proposition that a court should review every 30(b)(6) deposition notice on a topic-by-topic basis to entertain objections that certain categories cover information that has already been provided in response to other discovery devices." In fact, the court held:

> I am aware of no principle of law that precludes a party from pursuing during a deposition a topic about which it has already received information via other discovery devices. . . . There are, of course, only a finite number of pertinent events in any lawsuit, and how they occurred is a topic that may be pursued by all forms of discovery, even though the information provided by one form of discovery repeats and duplicates information yielded by another. Thus, the fact that information has been provided to plaintiff concerning a particular category does not, in itself, make that category an impermissible subject of a 30(b)(6) deposition.

Tri-State Hospital, 226 F.R.D. at 125-26. Likewise, Universal points to Novartis Pharmaceuticals Corp. v. Abbott Laboratories, 203 F.R.D. 159, 162-63 (D.Del. 2001), in which the court denied plaintiff's motion to compel a 30(b)(6) deposition under very different

9

circumstances from the facts at hand. The Novartis court held that defendant's offer to be bound by witness Dr. Norton's prior deposition testimony satisfied defendant's obligation under Rule 30(b)(6), as Dr. Norton was noted to be "the most knowledgeable witness in the subject area and would have been the designee for a 30(b)(6) deposition." As plaintiff had obtained over eighty pages of testimony from a knowledgeable witness that bound the corporation, the court found that a second deposition would be cumulative. Id. at 163. Additionally, the court in Nicholas v. Wyndham International, Inc., 373 F.3d 537, 543 (4th Cir. 2004), held that the discovery sought by plaintiff was cumulative, duplicative, unduly burdensome and harassing. However, in Wyndham, counsel had already deposed both plaintiffs, either of whom would have been the 30(b)(6) designee, and plaintiffs had already produced 400 pages of emails. The Fourth Circuit noted that these "extraordinary circumstances" supported the court's finding.

None of these cases cited by Universal supports its argument that the court should decline to impose sanctions for Universal's failure to produce a knowledgeable 30(b)(6) witness, because the information sought is available through non-30(b)(6) depositions and/or document production. Beyond that, Universal has not demonstrated to the court that it has provided adequate alternative means of discovery. In particular, Universal has not identified any specific information produced in discovery regarding its defense of a financial downturn.

To be sure, other Universal employees gave depositions on various issues in this case, and the court has read all of them. For example, Kim Peterson, disability claims manager, gave certain general testimony about workers' compensation issues. However, review of Peterson's deposition reveals that when asked specific questions concerning Spicer's comp claim or termination, Peterson's typical answer was "I don't know" or "I don't recall." Of course, there is

10

no obligation on a corporate employee such as Peterson, appearing for her deposition as a mere fact witness, to provide information known or readily available to the corporation. That is the point of the 30(b)(6) deposition. While an individual employee has no obligation under the rules of discovery to investigate and testify regarding information known or readily available to a corporate party at a deposition, a Rule 30(b)(6) deponent cannot shirk that obligation. William Collins, a dispatcher, testified about his supervision of Spicer and his performance evaluations. Michael McGregor, former senior manager of human resources, testified about his involvement in the events surrounding Spicer's termination. Scott Weeks, Pearisburg plant manager, testified about his responsibilities and the operation of the Pearisburg plant, including his understanding of the handling of workers' compensation claims, his knowledge of Spicer's written performance evaluations, his knowledge of Spicer's workplace injuries and open workers' compensation claim.[4]

The fact that four Universal employees were deposed does not relieve Universal of its obligations under Rule 30(b)(6). Providing plaintiff with discoverable information through non-30(b)(6) depositions and document production does not excuse Universal's failure to prepare its corporate designee for the 30(b)(6) deposition. Int'l Assoc. of Machinists & Aerospace Workers v. Werner-Masuda, 390 F. Supp. 2d 479, 489 (D. Md. 2005) (imposing sanctions). The mere fact that a corporation produces all of its documents relating to an allegation does not release it of its responsibility to produce competent witnesses. In re Vitamins Antitrust Litigation, 217 F.R.D. 229, 233 (D.D.C. 2002).

---

[4] While Weeks testified in very general terms about a lack of work and layoffs in the summer of 2006, (Weeks Dep. 133-39, 154, 167), his deposition provided no specifics as to this defense which counsel could probe nor was any financial data discussed at his deposition.

11

Universal has moved for summary judgment on all grounds, contending that there are no disputed issues of material fact. As to the age and disability discrimination claims, Universal contends that there is no dispute of fact that it has legitimate nondiscriminatory reasons for Spicer's termination, including both his poor performance and a downturn of business. But when the corporation was deposed on these subjects, it provided no information. There was no opportunity by counsel for plaintiff at the Rule 30(b)(6) deposition to probe these defenses with the corporation as the witness knew nothing about them. Although the corporation was given notice that the issues of Spicer's performance and the financial condition of the company would be inquired about at the corporate deposition, the corporation was mum, as it had done no investigation prior to the 30(b)(6) deposition.

Topic 10 sought information concerning "Universal Forest Product's knowledge of Mr. Spicer's year performance reviews, from the beginning of his employment through his termination and the bases for such reviews." As to Topic 10, Universal's 30(b)(6) witness testified as follows:

> Q. Have you had a chance to look over Mr. Spicer's reviews to prepare for today's deposition?
>
> A. No, I have not.
>
> Q. Have you done anything to prepare for topic ten of the 30(b)(6) notice?
>
> A. I've talked with our counsel.
>
> Q. Are you permitted to discuss what you spoke with your counsel about in preparing for topic ten?
>
> MR. FRENCH: Any communications – the witness is instructed not to answer with respect to the

12

>                               subject of any communications, but is free to
>                               discuss his knowledge or knowledge of any
>                               documents he's seen which have been
>                               produced.
>
> THE WITNESS:                 In preparation for this deposition, I recall
>                               looking at documents with our counsel. I
>                               can't recall whether these documents included
>                               Mr. – any review that may have been in Mr.
>                               Spicer's files or not. If they were in Mr.
>                               Spicer's files, I assume they would have been
>                               produced, but I haven't looked at them.

BY MR. FISHWICK:

> Q.    You have not?
>
> A.    Not that I recall. I don't recall specifically looking at them.

The same is true as to the issue of Spicer's claim that he was terminated for filing a workers' compensation claim. Many areas of the 30(b)(6) notice concerned the manner in which Universal handles workers' compensation claims in general, (Amended Notice Topic 1.b.), and its handling of Spicer's workers' compensation claim in particular (Amended Notice Topic 1.c.). At the 30(b)(6) deposition, the corporate deponent stated that he had done no investigation on these issues, and the deponent could provide no specific information on these topics. On the issue of the corporation's knowledge of Spicer's open workers' compensation claim, the corporate deponent testified as follows:

> Q.    Topic C, have you done any investigation into Mr.
>       Spicer's open workers' compensation claim?
>
> A.    I don't know whether Mr. Spicer has an open
>       workers' compensation claim. I have not tried to
>       determine whether he does or not.

(Universal 30(b)(6) deposition at 132).

13

The lack of investigation and information provided at the 30(b)(6) deposition regarding Universal's financial condition is even more striking given the affidavit on this topic Universal subsequently filed in support of its motion for summary judgment. Topic 16 provided Universal notice that plaintiff would inquire at the 30(b)(6) deposition about "business earnings for Universal Forest Products for years 2005 through the present." At the deposition, counsel for Universal noted that this request had been narrowed to concern Plant 281 in Pearisburg where Spicer was employed. Even having that understanding of the scope of Topic 16, the corporate deponent testified that "I don't have any specific financial information with respect to the Pearisburg facility." (Universal 30(b)(6) deposition at 120). While the deponent testified generally that site-built manufacturing facilities such as Pearisburg have seen a downturn with the drop in home construction in America, the deponent reviewed no financial documents concerning the Pearisburg plaint prior to the deposition, even though such information was available to him. (Universal 30(b)(6) deposition at 121-123).

There are two aspects of this testimony that make it particularly troubling. First, counsel for Universal sought to narrow the scope of the 30(b)(6) inquiry to the financial condition of the Pearisburg plant, yet even then the witness did no investigation and could provide no information regarding the financial performance of that facility. Second, fourteen days after the corporate deponent was unable to provide any specific information about the financial performance of the Pearisburg plant, an affidavit was executed by Universal's Chris Gaidrich on this very subject and submitted to the court in support of Universal's motion for summary judgment. It is incongruous that Universal can contend, based on this affidavit, that there is no dispute of fact as to the financial condition of its Pearisburg plant when counsel for plaintiff was given no

14

opportunity at the 30(b)(6) deposition to probe this defense, as the corporate deponent was utterly unprepared to testify on this subject.

In short, despite the clear requirements of Rule 30(b)(6), Universal did not come close to meeting its designation to provide a witness who could testify "about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). Whether by design or oversight, it is clear that Universal completely disregarded its obligations under Rule 30(b)(6). Spicer has been prejudiced in terms of the expenses incurred in preparing for and attending a 30(b)(6) deposition in a distant city that was utterly futile, and in its inability to obtain discoverable information on the company's alleged financial downturn. Sanctions are necessary in this case to deter a corporate party from hiding the ball as to such a critical defense. Given the immediacy of the trial date, requiring the plaintiff to conduct another Rule 30(b)(6) deposition would only serve to punish plaintiff's counsel by requiring them to retrace their steps instead of preparing for the impending trial. As such, the court finds the following sanctions to be appropriate under the Fourth Circuit's Wilson standard.

Universal shall pay Spicer's counsel's costs and fees associated in any respect with (1) the preparation and filing of the Rule 30(b)(6) Notice and Amended Notice; (2) any motions filed with the court concerning the scope of the 30(b)(6) Notices; (3) travel to Grand Rapids for the Rule 30(b)(6) deposition; and (4) filing, preparation and argument on the motion for sanctions. Spicer is directed to submit an accounting of such costs and fees within ten (10) days.

Universal's defense that Spicer was terminated for financial reasons related to the Pearisburg facility is stricken as the corporation's 30(b)(6) witness had no information on this topic. Because the corporation provide no specific financial information at the Rule 30(b)(6)

15

deposition, Spicer was unable to probe this defense. A party simply cannot disregard its obligations under the Federal Rules of Civil Procedure as Universal has in this case and thwart discovery on such a material issue. Given the fact that the trial is imminent and summary judgment briefs have been filed, ordering Universal to redo the 30(b)(6) deposition would only serve to needlessly delay the trial of the case. As such, at this late stage of litigation, no other sanctions are either effective or appropriate.

The 30(b)(6) witness was equally ignorant as to the factual basis for Universal's defense that Spicer was terminated due to his poor performance. Certainly, Universal's abject failure to comply with Rule 30(b)(6) on this topic could well justify striking this defense as well. However, as Spicer was able to question William Collins and Scott Weeks, who authored Spicer's performance reviews, on the subject of his performance, the court finds that there is not sufficient prejudice to warrant striking this defense as well.

An appropriate Order will be entered contemporaneously with this opinion.

The Clerk of the Court hereby is directed to send a copy of this Order to all counsel of record.

Enter this 1st day of October, 2008.

Michael F. Urbanski
United States Magistrate Judge